UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

In Re: ARLENE S. GOLD and
HOWARD G. GOLD,
        Debtors.

PETER RESSLER,
        Appellant,

    v.                                                           CASE NO. 3:13-cv-1744 (VAB)

WILLIAM K. HARRINGTON, U.S. Trustee,
        Appellee.

**RULING ON APPEAL OF BANKRUPTCY COURT'S AWARD OF ATTORNEY'S FEES**

Appellant, Peter Ressler, counsel to at least one debtor in a Chapter 11 bankruptcy proceeding, brings this appeal to challenge the compensation awarded to him by the United States Bankruptcy Court for the District of Connecticut. Notice of Appeal, ECF No. 1.[1] The Bankruptcy Court concluded that Mr. Ressler was not authorized to represent one of the debtors through the entire duration of the proceedings and, for this reason and others, awarded him less money than he sought. The Court **AFFIRMS** the Bankruptcy Court's Order.[2]

**I.    BACKGROUND**

Mr. Ressler filed a Chapter 11 bankruptcy petition on behalf of Arlene and Howard Gold on January 20, 2011. Petition, B'cy No. 1, ECF No. 2-1. At the time the petition was filed, Mr. Gold was the court-appointed conservator of his wife, who

---

[1] The Court will refer to documents filed on the District Court's docket using "ECF No." It will refer to items from the Bankruptcy Court docket number 11-30115 using "B'cy No." For documents on both the District Court and Bankruptcy Court docket, the Court will use both docket numbers.
[2] The Court decides this case without oral argument because it finds that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8019(b)(3).

had been deemed incompetent.[3] Second Am. Appl. for Final Compensation dated Oct. 4, 2013 ¶7, B'cy No. 325, ECF No. 2-2 (noting that the Probate Court appointed Mr. Gold as conservator of Ms. Gold and her estate on October 16, 2008); *see also* Mot. For Relief From Automatic Stay, Ex. A, B'cy No. 17-2, ECF No. 3-3 (noting Mr. Gold's status as conservator of the incompetent Ms. Gold as of June 2009). Thus, Mr. Gold was entitled to file a petition on his wife's behalf. *See* Fed. R. Bankr. P. 1004.1 (authorizing a conservator to file a voluntary petition on behalf of an incompetent person).

In his petition, Mr. Gold sought joint administration of both his and his wife's bankruptcy estates. *See* 11 U.S.C. § 302 (authorizing the filing of a single petition to initiate a joint bankruptcy case involving spouses). The filing of a joint petition by spouses creates two separate bankruptcy estates. *See* 11 U.S.C. § 541(a) (filing of a petition creates a bankruptcy estate); *Wornick v. Gaffney*, 544 F.3d 486, 491 (2d Cir. 2008) ("While Section 302 of the Bankruptcy Code allows spouses to file jointly, it does not automatically consolidate their estates.")(citing 11 U.S.C. § 302(b) providing that the Court "shall determine the extent, if any, to which the debtors' estates shall be consolidated"). Neither Mr. Ressler nor the U.S. Trustee claims that the Court ever entered an order consolidating Mr. and Ms. Gold's estates. The Bankruptcy Court then proceeded to administer Mr. Gold and Ms. Gold's estates as two separate entities.

---

[3] A conservator is tasked with supervising the financial and personal affairs of a person who either voluntarily requests the appointment of such a person or who is found to be incapable of caring for himself or herself without assistance. Conn. Gen. Stat. §§ 45a-644(a)-(b).

Debtors Mr. and Ms. Gold continued to be in possession of their property for the first three years of the proceeding as "debtors in possession."[4]  *See* 11 U.S.C. §1107 (a); Debtor's Appl. To Employ Peter L. Ressler As Attorney for the Debtor ¶ 2, B'cy No. 151, ECF No. 3-44.  A debtor in possession has the same rights, powers, and duties as a trustee.  *See* 11 U.S.C. §1107 (a); *Smart World Techs. LLC v. Juno Online Servs., Inc. (In re Smart World Techs. LLC)*, 423 F.3d 166, 174 n.10 (2d Cir. 2005); *see also Boatman v. E.J. Davis Co. (In re Choice Vend, Inc.)*, 49 B.R. 719, 720 (Bankr. D. Conn. 1985).  Accordingly, like trustees, debtors in possession may only employ counsel with the Court's approval.  *See Baker Botts L.L.P. v. ASARCO LLC*, No. 14-103, 2015 WL 2473336, at *3 & n.1 (June 15, 2015) ("§ 1107(a) gives Chapter 11 debtors in possession the same authority as trustees to retain § 327(a) professionals"); *see also* 11 U.S.C. §327(a) ("the trustee [or debtor in possession], with the court's approval, may employ one or more attorneys… that do not hold or represent an interest adverse to the [Bankruptcy] estate, and that are disinterested persons").  To receive compensation for his services, counsel for a debtor in possession also must apply to the Court under section 330 of the Bankruptcy Code.  11 U.S.C. § 330 ("[T]he court may award to a… professional person employed under section 327 [ ] reasonable compensation for actual necessary services rendered… and [ ] reimbursement for actual, necessary expenses.").

On March 1, 2011, Mr. Gold sought the Court's approval for Mr. Ressler to represent him and his wife in the Bankruptcy Court under section 327(a) of the

---

[4] The trustee, Mr. George I. Roumeloitis, was added to the case well after the facts relevant to this appeal occurred.  Order Granting Mot. To Convert Case from Chapter 11 to Chapter 7 dated May 7, 2014, B'cy No. 364.

3

Bankruptcy Code.  Debtor's Appl. To Employ Peter L. Ressler As Attorney For The Debtor, B'cy No. 17, ECF No. 3-1.  He filed an application, signed by both himself and his wife, asking the Court to authorize Mr. Ressler to provide "general legal services… throughout the course of this chapter 11 case." *Id*.  At the time Mr. Gold made this request, he had retained Mr. Ressler on Ms. Gold's behalf and was acting as her conservator.  *See* Conn. Gen. Stat. §45a-656(a)(3) (conferring on the conservator of a person the authority to give consent for that person's "professional care, counsel, treatment or service").

While the Golds' application to employ Mr. Ressler was still pending, Mr. Gold was replaced as Ms. Gold's conservator on July 11, 2011 by Katrina K. Camera, who filed her own application to appoint another lawyer, Mr. Noah Schafler, as counsel for Ms. Gold.  Appl. To Employ Noah Schafler as Attorney For the Consevator of Estate or Arlene Gold ¶ 2, B'cy No. 87, ECF No. 3-22.  The Bankruptcy Court granted this application on November 23, 2011.  Order, B'cy No. 108, ECF No. 3-29.  Since he was no longer authorized to act on Ms. Gold's behalf, Mr. Gold amended his application for employment of counsel to remove his wife's name, and the Court granted this revised application on January 4, 2012, approving Mr. Ressler's representation of Howard Gold only.  Corrected Debtor's Appl. To Employ Peter L. Ressler, B'cy No. 101, ECF No. 3-27; Order, B'cy No. 116, ECF No. 3-31.

Arlene Gold passed away on May 13, 2012, and Mr. Gold was initially appointed as the executor of her probate estate.[5]  *See* Tr. of Oct. 7, 2013 H'rg. 14:1-7,

---

[5] At this point in time, there were three "estates" formed relevant to this appeal.  Two bankruptcy estates were formed by the filing of the Chapter 11 petition, one containing Ms. Gold's property, the other Mr. Gold's property.  *See* 11 U.S.C. §541(a) (filing of a petition creates a bankruptcy estate).

4

18:16-21, ECF No. 16; Mot. For Relief from Stay ¶3, B'cy No. 142, ECF No. 3-42. Under his authority as executor, Mr. Gold then filed a renewed application to employ Mr. Ressler as counsel in the Bankruptcy proceeding for Ms. Gold's probate estate on May 29, 2012.  Debtor's Appl. To Employ Peter L. Ressler As Attorney for the Debtor, B'cy No. 151, ECF No. 3-44; *see* Conn. Gen. Stat. § 45a-234(19) (providing personal representatives with the power to employ and compensate persons, like attorneys, who are necessary to advise or assist in proper settlement of the estate).  The Court granted this application on July 19, 2012 and ordered that it take effect on the date the application was filed, May 29, 2012.  Order dated July 19, 2012, B'cy No. 174; *See* Appl. To Employ Peter L. Ressler As Attorney For the Estate of Arlene S. Gold, B'cy No. 151, ECF No. 3-44.  In its order, the Court authorized Mr. Ressler to represent Ms. Gold's probate estate in the bankruptcy proceeding, approved a $20,000 retainer, and directed Mr. Ressler to apply to the Court as appropriate for compensation and reimbursement of expenses.  Order dated July 19, 2012, B'cy No. 174.[6]

Several months after the application was granted, on October 3, 2012, Mr. Gold was replaced as Ms. Gold's probate estate's personal representative by Mr. Paul Whitaker.  Tr. of Oct. 7, 2013 H'rg. 21:21-22:2, ECF No. 16 (The Court: "I believe it was the 3rd of October, 2012, that Mr. Gold was replaced by Mr. Whitaker as the personal representative of the estate.  Is that correct?"  Mr. Ressler: "That's correct

---

When Ms. Gold passed away, all of her property went into her probate estate.  A Chapter 11 bankruptcy case that involves a debtor who dies while the proceeding is still ongoing may continue "in the same manner… as though the death [ ] had not occurred" "if further administration is possible and in the best interest of the parties."  *See* Fed. R. Bankr. P. 1016.

[6] There was no written engagement letter authorizing Mr. Ressler to represent Ms. Gold's estate or governing the nature, scope or length of the attorney-client relationship.  Tr. of Oct. 7, 2013 H'rg. 29:1-14, ECF No. 16.

your Honor."). Mr. Ressler, however, believed that he continued representing the probate estate in the bankruptcy proceedings after this date, under the Court's July 19, 2012 Order. Appellant Br. 7, ECF No. 11. Mr. Whitaker filed a notice of appearance on behalf of "Paul E. Whitaker, Administrator, d.b.n., c.t.a. of the Estate of Arlene S. Gold" on December 11, 2012. Notice of Appearance, B'cy No. 193, ECF No. 4-3.

On June 21, 2013, Mr. Ressler filed an application seeking compensation from Ms. Gold's estate for work he claims to have performed for its benefit from May 29, 2012, the effective date of the Order approving him as Ms. Gold's estate's counsel, until May 21, 2013, the last date for which he sought compensation for this work. Appl. For Final Comp., B'cy No. 274, ECF No. 4-11. He amended this application twice. B'cy No. 306, ECF No. 4-15; B'cy No. 325, ECF No. 2-2. Ultimately, he requested compensation for his services in the amount of $61,655 plus $125 for expenses. Second Am. Appl. For Final Comp., B'cy No. 325, ECF No. 2-2. The Office of the United States Trustee objected to the application because, among other reasons, Mr. Ressler failed to explain "what authority" allowed him to represent Ms. Gold and because his application failed to comply with the requirements of the Bankruptcy Code, as well as federal and local rules. U.S. Trustee's Objections to Appl. For Final Comp., B'cy No. 283, ECF No. 4-14; B'cy No. 314; ECF No.4-19.

The Bankruptcy Court held an evidentiary hearing on October 7, 2013. Minute Entry, B'cy No. 327. Mr. Ressler testified that he spoke with Mr. Whitaker often after he was appointed executor and that Mr. Whitaker did not object to Mr. Ressler's services. Tr. of Oct. 7, 2013 H'rg. 28:1-12, ECF No. 16. Mr. Ressler also

noted that he did not include the time he spoke to Mr. Whitaker on the time records he submitted to the Court. *Id.* at 28:1-3. Because Mr. Whitaker was not made available to the Court by Mr. Ressler on the date of the hearing, the Court did not take his testimony. *Id.* at 27:3-8.

On October 11, 2013, the Court approved a fee for Mr. Ressler of $28,690, significantly less than the $61,655 he had requested. Order, B'cy No. 330, ECF No. 2-5. The amount of the award represented Mr. Ressler's requested amount for work performed from May 29, 2012 to October 3, 2012, the date of the removal of Mr. Gold as the executor of Ms. Gold's estate.[7]

The Court provided seven reasons justifying its "significant reduction" in the amount requested as follows: (1) failure to comply with Local Bankruptcy Rule 2016-1 (hereinafter "D. Conn. LBR"); (2) the record did not demonstrate that Mr. Ressler was authorized to represent Ms. Gold's estate, after Mr. Gold had been removed as executor; (3) Mr. Ressler's incorporation of some of Ms. Gold's assets into a "joint" schedule for both debtors suggested a "disqualifying conflict" for his representation of Ms. Gold; (4) the time records do not show that Mr. Ressler was interacting at all with the administrator of Ms. Gold's estate, Mr. Whitaker, after October 3, 2012; (5) no time entry made is less than a quarter of an hour, in violation of D. Conn. LBR 2016-1(a)(3)(c) which requires time to be kept in tenth of an hour increments; (6) the new administrator of Mr. Gold's estate filed his own

---

[7] Based on the time records Mr. Ressler submitted with his application, from May 29 to October 3 he worked 75.5 hours, which at his hourly rate of $380, resulting in $28,690 in fees for that time period. *See* Second Am. Appl. For Final Comp., Schedule A, B'cy No. 325-1, ECF No. 2-4. There is one time entry for 9/24/2012 for "50," which appears likely to be a typo and is construed by this Court as .5 hours. *Id.* at 5.

7

appearance, B'cy No. 193, ECF No. 4-3; and (7) Mr. Ressler's description of services rendered in his application for payment "bear little relationship to the [attached] time records." Order 2, B'cy No. 330, ECF No. 1-1.

Mr. Ressler expressly limits his challenge on appeal to the second reason the Court advanced and argues that he properly represented Ms. Gold's estate after the appointment of a new executor, under the Court's original July 2012 Order approving him as counsel for the Ms. Gold's estate. Appellant Br. 5-6, ECF No. 11. The U.S. Trustee contends that, in essence, the Court properly awarded the lower fees because (1) Mr. Ressler did not prove that all services for which he sought compensation had been intended to benefit the bankruptcy estate of Ms. Gold's estate, and (2) Mr. Ressler did not comply with the requirements of the Bankruptcy Code as well as federal and local rules regarding professional fee applications. Appellee Br. 1-2, ECF No. 12.

## II.  PROCEDURAL HISTORY

Mr. Ressler timely filed a notice of appeal of the Bankruptcy Court's decision on October 23, 2013, B'cy No. 336, ECF No. 1, and both sides filed with this Court their designations of the record from the Bankruptcy Court, ECF Nos. 2, 3, 4. *See* Fed. R. Bankr. P. 8002(a)(1) (providing 14 days to file a notice of appeal from the date of the judgment, order, or decree being appealed); Fed. R. Bankr. P. 8009 (governing the designation of the record on appeal). Under Bankruptcy Rule 8018 (formerly Rule 8009), the parties filed opening, opposition, and reply briefs with the Court in early 2014. ECF Nos. 11, 12, 13.[8]

---

[8] The case was transferred to this Judge on January 26, 2015. Transfer Order, ECF No 17.

**III.     STANDARD OF REVIEW**

A district court has jurisdiction to review final judgments, orders and decrees made by the Bankruptcy Courts. 28 U.S.C. § 158(a)(1). On appeal, the Court reviews a Bankruptcy Court's legal conclusions *de novo*, including its determination of the applicable legal standards. *In re Refco Inc.*, 505 F.3d 109, 116 (2d Cir. 2007); *Rogers v. E. Sav. Bank (In re Rogers)*, 489 B.R. 327, 330 (D. Conn. 2013). Factual findings are reviewed for clear error. *Rogers*, 489 B.R. at 330.

The decision to award attorney's fees under section 330 is reviewed for abuse of discretion. *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am.* (*In re JLM*), 210 B.R. 19, 23 (2d Cir. B.A.P. 1997); *In re Tribeca Market, LLC*, 516 B.R. 254, 269 (Bankr. S.D.N.Y. 2014) (collecting Second Circuit cases). "An abuse of discretion occurs where the Bankruptcy Court (1) fails to apply the proper legal standard or follows improper procedures in determining the award or (2) bases its award on findings of fact that are clearly erroneous." *Gould v. Prologis Six Rivers Ltd. P'ship* (*In re Gould*), No. 3:07-cv-591 (WWE), 2009 WL 179883 at *1 (D. Conn. Jan. 22, 2009) (citing *Zeisler & Zeisler, P.C.* (*In re JLM*), 210 B.R. at 23).

**IV.     DISCUSSION**

As noted above, Mr. Ressler only directly challenges one of the seven reasons justifying the Bankruptcy Court's award of attorney's fees. Based on a review of the challenged reason, as well as the others provided, this Court finds that the Bankruptcy's Court's fee award is supported by both the facts and the law and does not represent an abuse of discretion.

### A. The Attorney-Client Relationship Between Mr. Ressler and Ms. Gold's Estate

As the second reason under its Order, the Bankruptcy Court found that Mr. Ressler failed to show that he had an attorney-client relationship with Ms. Gold's probate estate after October 3, 2012, and because section 330 of the Code only authorizes the award of fees to lawyers employed by a debtor in possession under section 327, Mr. Ressler was not entitled to fees accrued after that date. *See* 11 U.S.C. §§ 327(a), 330(a)(1). The Bankruptcy Court reasoned that an attorney representing a probate estate has an attorney-client relationship with the personal representative, not the estate. Tr. of Oct. 7, 2013 H'rg 24:2-3, ECF No. 16 ("The estate itself doesn't have counsel. The personal representative has counsel."). Thus, upon the removal of Mr. Gold as the personal representative of Ms. Gold's probate estate, Mr. Ressler lacked a statutory basis for collecting legal fees for work done allegedly on behalf of Ms. Gold's estate.

Mr. Ressler argues that there is no law supporting the Court's position that new authorization was required to provide legal services to Ms. Gold's probate estate after the appointment of a new executor. Appellant Reply Br. 4-5, ECF No. 13. In fact, Mr. Ressler contends that his responsibilities as counsel continued as a matter of law under various Connecticut statutes that govern fiduciaries in the probate context. Appellant Br. 7-8, ECF No. 11 (citing Conn. Gen. Stat. §§ 45a-199, 45a-242, 52-599, 45a-234(18)).[9] Mr. Ressler also argues that Mr. Whitaker "never

---

[9] Section 45a-199 defines "fiduciary" to include "executor" or "conservator." Section 45a-234 defines the powers of a fiduciary, which include participating in reorganizations, *see* Conn. Gen. Stat. § 45a-234(13), pursuing litigation, *see* Conn. Gen. Stat. § 45a-234(18), and employing and compensating necessary agents, including attorneys, *see* Conn. Gen. Stat. § 45a-234(19). Section 45a-242 governs

10

objected to the work being completed by Attorney Ressler, never made any effort to obtain new counsel and viewed Attorney Ressler's efforts as benefitting the estate by minimizing claims." Appellant Reply 5, ECF No. 13. He also claims that the Bankruptcy Court never revoked the approval of his application to serve as counsel for Ms. Gold's estate, and that this Order constitutes evidence that an attorney-client relationship existed and, thus, that he should be compensated. The Court finds that there was not an abuse of discretion as a matter of law or fact in denying Mr. Ressler attorney's fees for work after Mr. Gold could no longer represent Mrs. Gold's estate.

Under Connecticut law, "[a]n attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." *DiStefano v. Milardo*, 276 Conn. 416, 422 (2005). The relationship is based on principles of agency, so the attorney "must be authorized to act for the client, and [ ] the client must exercise control over the attorney," for a relationship to exist. 7 Am. Jur. 2d Attorneys at Law § 137 (2015); *see Ackerman v. Sobol Family P'ship, LLP,* 298 Conn. 495, 510 (2010) (noting that agency principles apply to attorney-client relationships). During an attorney-client relationship, counsel has an ethical obligation to communicate regularly with his client. *See* Ct. Rules of Prof'l. Conduct 1.2(a), 1.4, 1.14. The burden of proving an attorney-client relationship existed is on the party claiming the existence of the relationship. *DiStefano*, 276 Conn. at 422.

The attorney-client relationship may be terminated formally or *de facto*, which occurs when "a client takes a step that unequivocally indicates that he has

---

the replacement of a fiduciary. Section 52-599 provides that a lawsuit continues against a person when he dies against the executor of the deceased.

ceased relying on his attorney's professional judgment." *Nacholi v. Paul*, No. X05CV065004726S, 2007 WL 4754965, at *2 (Conn. Super. Ct. 2007) (quoting *DeLeo v. Nusbaum*, 263 Conn. 588, 597 (2003)).  If the principal authorizing the lawyer to act for an entity loses his or her authority to speak for that entity, the authority is revoked and the relationship ends.  *See* Restmt. (Third) of Agency § 3.09 (2006) (actual authority terminates "upon the occurrence of circumstances on the basis of which the agent should reasonably conclude" that authority is revoked.).

Mr. Ressler has conceded that Mr. Gold was replaced as executor by Mr. Whitaker on October 3, 2012.  Tr. of Oct. 7, 2013 H'rg. 21:20-22:2, ECF No. 16.  When Mr. Gold was replaced, Mr. Ressler had an obligation to clarify the nature of his relationship with the estate.  He failed to do so and, in fact, his time records indicate that he did not communicate with Mr. Whitaker at all after October 3.  *See id.* at 25:5-9; Second. Am. Appl. For Final Comp., Schedule A, B'cy No. 325; ECF No. 2-2.  Even though Mr. Ressler was appointed by the Court and arguably his representation could not end until he was released by the Court, *see* Ct. Rules of Prof'l. Conduct 1.6, cmt. ("[w]hen a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority."), Mr. Ressler—for reasons discussed supra—had a legal and ethical obligation to determine if he could still provide representation to Ms. Gold's probate estate, given that he represented Mr. Gold who could no longer act on Ms. Gold's behalf.  Just as importantly, Mr. Whitaker filed his own notice of appearance in December 11, 2012, which should have at least prompted a discussion between Mr. Ressler and Mr. Whitaker to clarify the scope of their responsibilities.  Indeed, in the estate

administration context, the Rules of Professional Conduct in Connecticut place the burden on the lawyer to clarify any confusion about "the lawyer's relationship to the parties involved." *See* Ct. Rules of Prof'l Conduct 1.7, off. cmt.

Mr. Ressler nevertheless argues that lawsuits cannot be dismissed when a party dies or a fiduciary is replaced, citing Connecticut statutes. For example, he cites section 45a-234(18), which memorializes the power of fiduciaries to pursue litigation on behalf of the party to whom they owe a fiduciary duty. Conn. Gen. Stat. §45a-234(18). He also cites section 45a-242, which provides "[a]ll suits of or against the original fiduciary shall survive to and may be prosecuted by or against the person appointed to succeed such fiduciary." Conn. Gen. Stat. § 45a-242. Finally, he cites section 52-599 which provides that lawsuits continue against a person who dies while they are still pending. Conn. Gen. Stat. § 52-599. None of these statutes, however, squarely address, much less govern, the attorney-client relationship.

Mr. Ressler also argues that because Mr. Whitaker and, as a result, Ms. Gold's estate, benefitted from his work in the case, that an attorney-client relationship was established between himself and Mr. Whitaker in his capacity as the estate's personal representative. However, such reasoning has been considered and rejected by Connecticut's highest court. In *DiStefano*, the Connecticut Supreme Court held that the fact that an individual "indirectly benefitted" from a lawyer's work in preparing estate planning documents did not create an attorney-client relationship. 276 Conn. at 423. In other words, the mere fact that an attorney's actions may benefit a third party does not and cannot create an attorney-client relationship with that third party. *See id.*

13

Accordingly, the Bankruptcy Court's conclusion that Mr. Ressler did not have an attorney-client relationship with Ms. Gold's probate estate after Mr. Whitaker was appointed executor was not an abuse of discretion as a matter of law or fact.

### B. The Award of Compensation Under Section 330

Even if this Court were to conclude that Mr. Ressler did have an attorney-client relationship with Ms. Gold's probate estate that continued after Mr. Gold was removed as executor, it would still affirm the Bankruptcy Court's award of compensation for the other reasons provided in its Order. The party seeking compensation bears the burden of proof on its claim for attorney's fees. *In re Tribeca Market, LLC,* 516 B.R. 254, 273 (Bankr. S.D.N.Y. 2014) (citation omitted). As the Bankruptcy Court concluded, Mr. Ressler has failed to meet his burden in a number of different ways.

"Bankruptcy courts enjoy wide discretion in determining reasonable fee awards." *Ziesler & Zeisler, P.C. (In re JLM, Inc.)*, 210 B.R. at 23. Section 330 of the Bankruptcy Code authorizes the Court to award "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." 11 U.S.C. §§ 330(a)(1)(a)-(b). In determining the amount of compensation an attorney should receive, the Court should consider "the nature, the extent, and the value of such services, taking into account all relevant factors including" the time spent, the rate charged for such services, whether the services were necessary or beneficial at the time they were rendered, whether the services were performed within a reasonable amount of time, and whether the compensation is reasonable based on the "customary compensation charged by

comparably skilled practitioners." 11 U.S.C. § 330(a)(3). The statute specifically authorizes the Court to "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

### 1. Benefit of Services Provided to Ms. Gold's Estate

Section 330 provides that one of the factors to be considered is whether the services provided benefitted or were necessary to the estate at the time they were rendered. 11 U.S.C. §330(a)(3)(C); *cf. Zeisler & Zeisler, P.C.* (*In re JLM*), 210 B.R. at 27 (holding that the "reasonably likely to benefit the estate" standard must be applied in an objective manner and the Court must make sufficient factual findings, on the record, upon which to base its decision)(citation omitted). The Bankruptcy Court rightly concluded that Mr. Ressler's services did not benefit Ms. Gold's estate and made specific factual findings consistent with its conclusion. As the Bankruptcy Court noted, the time records do not indicate that Mr. Ressler had a single meeting with Mr. Whitaker after October 3, 2012. Moreover, Mr. Ressler does not offer any evidence, other than his own un-sworn statements, that the services he provided benefitted Ms. Gold's estate. Tr. of Oct. 7, 2013 H'rg 26:10-20, ECF No. 16 (Mr. Ressler noting that he had "numerous conversations with Mr. Whitaker"); *see also* Second. Am. Appl. For Final Comp. ¶¶ 4-10, 11, B'cy No. 325; ECF No. 2-2. Mr. Gold testified at the evidentiary hearing but could not recall the nature of the working relationship between Mr. Ressler and Mr. Whitaker. Tr. of Oct. 7, 2013 H'rg. 15:21-16:12, ECF No. 16.

Mr. Ressler also said that he did not keep time records of the discussions he had with Mr. Whitaker. *Id.* at 27:10-23. The Court did not abuse its discretion in

15

construing Mr. Ressler's failure to keep records against him in his application for fees. *See In re Poseidon Pools of Am.*, 216 B.R. 98, 100 (E.D.N.Y. 1997) (citation omitted) (affirming a Bankruptcy Court's refusal to award fees for work recorded with "inadequate entries on the time sheets submitted" because of the "general rule that uncertainties due to poor-record-keeping will be resolved against the applicant").

### 2. Conflict of Interest

Moreover, an attorney employed by a debtor in possession under section 327 must be disinterested and must remain so throughout the case. *See In re Granite Partners, L.P.*, 219 B.R. 22, 32-33 (Bankr. S.D.N.Y. 1998) (citation omitted). The Court may disallow fees for a lawyer if at any time during the proceeding he "is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which [he] is employed." 11 U.S.C. § 328(c); *In re Angelika Films 57th, Inc.*, 246 B.R. 176, 179 (S.D.N.Y. 2000) (finding that the decision to deny all fees due to conflicted representation was within the discretion of the Bankruptcy Court). A Bankruptcy Court's findings on this conflict of interest issue are "entitled to deference because a bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 628 (2d Cir. 1999) (citation and internal quotation marks omitted).

Section 101(14) of the Bankruptcy Code defines a disinterested person as one who "does not have an interest materially adverse to the interest of the estate…

by reason of any direct or indirect relationship to, connection with, or interest in the debtor." 11 U.S.C. § 101(14).  A party has an "adverse interest" if he "possess[es] or assert[s] mutually exclusive claims to the same economic interest" or if he "possess[es] a predisposition or interest under circumstances that render such a bias in favor of or against one of the [persons]." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (citation and internal quotation marks omitted).  "Having to divide one's allegiance between two clients is what section 327 attempts to prevent." *Id.* at 54 (citation and internal quotation marks omitted).

The removal of Mr. Gold as Ms. Gold's personal representative of her probate estate meant that Mr. Gold could not represent both his interests and Ms. Gold's interests.  As a result, there is no legal or ethical basis for concluding that Mr. Ressler could do so either. *See In re Mercury*, 280 B.R. at 54-55 ("Bankruptcy courts do not have the authority to allow employment of a professional who has a conflict of interest… To condone employment of an attorney who has a conflict of interest… would erode the confidence of other parties in the administration of that estate to say nothing of public confidence in the administration of justice in bankruptcy courts") (citations and internal quotation marks omitted).  Mr. Ressler also amended a schedule of assets, which involved assets in Ms. Gold's estate, without consulting Mr. Whitaker at all.  Tr. of Oct. 7, 2013 H'rg. 24:22-25:9, ECF No. 16; *compare* Schedule B dated March 8, 2011, New Alliance Bank-savings account, B'cy No. 32, ECF No. 3-7 *with* Schedule B dated June 12, 2013, New Alliance Bank-savings account, B'cy No. 268, ECF No. 4-7.  As Mr. Ressler conceded, in amending the schedule, "we were primarily concerned with an exemption that Mr. Gold may have"

17

and because "that didn't really deal with Arlene, I did not discuss that with her." *Id.* at 25:10-15.  Of course, since the amended schedule involved assets in Ms. Gold's estate, these matters did "deal with" her.  Thus, Mr. Ressler placed himself in a situation where he was representing two clients that have a competing interest in the same property.  Even more problematic, he appears to have exhibited a bias towards Mr. Gold.  On this basis alone, Mr. Ressler could be denied fees after Mr. Gold's removal as personal representative of Ms. Gold's probate estate.  *See In re Mercury*, 280 B.R. at 57-58 (collecting cases denying or reducing fees because the attorney did not remain disinterested).

### 3.     Compliance with Bankruptcy Code and Local Rules

Finally, in filing an application for compensation, an attorney must comply with federal and local Bankruptcy Court rules.  *See* Fed. R. Bankr. P. 2016(a); D. Conn. LBR 2016-1(a).  These rules are in place to ensure that the Bankruptcy Court bases its compensation awards on accurate and complete information.  When an applicant fails to honor these rules, he fails to meet part of his burden.  *See e.g., In re Delieto*, 468 B.R. 510, 529-35 (Bankr. D. Conn. 2012)(noting that noncompliance with D. Conn. LBR 2016 in a variety of ways precluded the Court from properly determining an appropriate award of compensation and awarding no compensation for that reason and others).  Mr. Ressler's application fails to comply with Local Rule 2016, including that the time sheets provided show time in quarter of an hour increments as opposed to tenth of an hour increments.

The Bankruptcy Court also correctly noted that at the time this application was made, Mr. Ressler had not requested compensation from Mr. Gold for these

18

services and that he had not foreclosed the possibility of doing so.  Tr. of Oct. 7, 2013 H'rg. 29:21-30:22, ECF No. 16.  Thus, the Court's ruling did not prevent Mr. Ressler entirely from receiving compensation for work he did after October 3, 2012.

### V. CONCLUSION

For all of the foregoing reasons, the Bankruptcy Court's October 11, 2013 Order, B'cy No. 330, is **AFFIRMED**.  Accordingly, the relief requested in the appeal filed by Mr. Ressler, ECF No. 1, is **DENIED.**  The Clerk is directed to close this file.

**SO ORDERED** this 18th day of June 2015, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
